Please call the next case. Case number 17-0182, Jane Doe v. Bridgeforth, Utah. Thank you. I guess you heard my instructions to the prior counsel since you stepped right up. Okay, tell us your name and who you represent. As I said earlier, the appellant should reserve a few minutes for rebuttal. And I neglected to say at the beginning, we really give each side 15 minutes for the argument, and I've been keeping to that kind of, but try to watch your time. Go ahead, counsel. Good morning, Justices. My name is Vivani Ravindran. I represent the plaintiff appellants, Jane Doe and Doe Child, and I will be reserving two minutes for rebuttal. Proceed whenever you're ready, counsel. Thank you. May it please the Court. At the heart of this case lies this question. What level of confusion is available when a jury ignores clear evidence in the sexual assault of a child, and when a jury ignores unrebutted evidence of the damage caused by that assault? According to the defendants, this jury found that the sexual assault of Doe Child was de minimis. If this jury could believe that, then that is the clearest evidence we could have of their confusion. Their confusion stemmed from many errors throughout the case, and these errors were substantial that could have tipped the scales in the favor of the plaintiff, and they do call for reversal. The first and most egregious of these errors is the use of the word intentional during closing arguments. At the outset of the trial, the plaintiffs filed a motion in limine barring the use of the word intentional during opening and closing arguments. Opposing counsel did not object to this. In fact, he said he would not play fast and loose with the law. This motion in limine was granted without objection. When the defendants were closing, they used the word intentional when describing the conduct of one of the agents of the Board of Education. Was it repeated, counsel? Was it a repeated use of the word intentional? The use of the word intentional was used once. Once. The plaintiffs did object to it, and that objection was overruled by the court. It was not addressed directly by the judge at that point. The jury was not directed to disregard this statement. So how many times was the word used? During closing argument, the word intentional was used one time. Thank you. But the instructions, the written instructions that went back to the jury, did not contain that objectionable word intentional, did it? No, it did not. And the written instructions that went back to the jury comported with the limine pattern jury instructions. They did, Your Honor. And during the discussions over jury instructions, everyone was in agreement that the word intentional should be struck from the definition that was provided for willful and rotten conduct to the jury, and that was because there was no intentional conduct on part of the Board of Education that was alleged by the plaintiff. Now, we believe that the word intentional did confuse the jury because it was referenced directly to the conduct of Ezra Townsend. This was the coach that allowed Doe Child to leave in a vehicle alone with Idris Bridgeworth after being driven away from where he knew Doe Child to live in the city all the way to the suburbs. He did so without asking us. The word intentional was used at one time, and you believe that that's what confused the jury so that they rendered a verdict that ended you up here in the appellate court. Is that what you're telling me? Not on its own, Your Honor. I do believe there were other errors that added to the confusion of the jury. I do believe that that was one of the most significant portions that did give confusion. And to go back to my point, Ezra Townsend's conduct was one of the most clear pieces of evidence the jury heard regarding willful and wanton conduct. When the jury heard the defense attorney refer to that conduct as not done intentionally, it laid a pall over that particular conduct, which was never able to be corrected by the plaintiffs again. Yes, the willful and wanton conduct standard that was to be used in the court  I'll find for me what evidence you think in this case shows the willful and wanton elements that the plaintiffs needed to prove. What were the specific things that you think constituted willful and wanton conduct? Sure. Other than the fact that I think we all agree that there was no written consent given by the parent and by the principal for this child to be transported in a personal vehicle. So other than that, what are the facts that you put before the jury that constituted willful and wanton conduct? What willful and wanton conduct was in this case was actually defined by an agent of the Board of Education. Coach Leary Morgan said that an employee who sees a student in a private vehicle and doesn't investigate makes a decision not to act with regard to the safety of that student. The jury heard eight different episodes where this same standard was met by agents of the Board of Education, five of which were Mr. Ezra Townsend, the fifth one being the one we've discussed already, Your Honors, where he let Doe Child ride back all the way to the city, and abuse did actually, in fact, occur on that ride. There were other instances from different staff members, Ms. McKay, Ms. Rippey, and even the Principal Diaz, Doe Child testified that she had told Principal Diaz, I'm going to be riding in the car with Defendant Bridgeforth. On all of these occasions, no one investigated as to whether permission had been given, whether written permission had been given. And that policy requires... But where do we leave the mother's testimony that she would have given the permission had she been asked? Jane Doe did testify as to that. She had given text and verbal permission to Idris Bridgeforth to drive her child. But she also testified that that was not the understanding, that he was driving the team or a portion of the team. She did not give express permission for him to ride alone with her daughter. She actually testified... That's not my question. My question, not what she actually did, but she testified that had she been asked to give permission, she would have given it. She did testify that she would give permission, but she did not testify... She actually said had she been asked for one-on-one permission, she would not have given it. And that's what we're talking about here. These instances of abuse happened when he was alone with Doe Child in the vehicle, something she was not aware was happening. Also, we're holding Jane Doe to the standard of understanding the rules. Without having any suspicions or knowledge that he was circumventing rules that were in place, she didn't know that this behavior was occurring outside the auspices of CPS. She thought this is something that these other students are doing, the rest of the team is in there with her. She never knew that her child was alone with Bridger Bridgeforth. Let me ask you another question that's related. But in order to find that the school district, the CPS is liable, in addition to the underlying elements that you would have to find for anybody, you would have to add, superimpose this willful and wanton element on top of it. Can you tell me, go through what constitutes the approximate cause and all of that in the underlying, just tell me from your evidence, what do you think those facts were that met the underlying principles for saying, yeah, this, not only do we have this, but now we have willful and wanton. So why don't you start with the approximate cause. What's the approximate cause here in terms of the facts that you presented to the jury? If I'm understanding correctly, I should go through the causation. That's what you want to hear about. Yes, of course. Causation in this case is simple. The full record confuses it, but it is there. Bridger Bridgeforth broke the rules. The Board of Education agents knew he was giving rides to Doe Child and that the rules applied to those rides. That evidence did come in. The rules were also in place to stop things like sexual abuse. How do we know that? You have an expert witness who sort of conjectures about the reason for a rule, which doesn't say what it's for. It could be that there are a lot of people riding in individual cars because there may be reckless drivers and they get into an accident. I mean, there could be any number of reasons for that rule. Nowhere did I see what the real reason for the rule was. But could you go back to answering my question? Because I think causation and all of that is important in terms of how you get to the next step. So tell me what the cause goes through all of those elements for me, if you will. And so, Donna, I do believe that the reasoning behind the rule is part of the causation. So if I may address that first, and I will explain how that fits into causation. We did have testimony from school clerk Denise Glenar that those rules were in place to stop sexual abuse from happening. School principal, Principal Diaz, indicated that those rules were in place for the safety of both the child and the adult. And our expert Bridget Connelly for the plaintiffs did also testify that those rules were in place to stop things like sexual abuse from happening. This goes to that old adage that sometimes rules are in place to prevent a previous injury. I already got that. No. And I'll go back to causation now. Thank you, Your Honor. The Board of Education agents didn't do anything to check if the rules were being followed. And we had this on eight different occasions through the testimony. The Board of Education agents, through them not checking, according to the standards set before the court, they created the opportunity for the abuse of Doe Child to occur. They created an environment of impunity where Idris Bridgeforth knew that those rules would not be enforced. Can we agree that the opportunity was created by Bridgeforth driving the Doe Child in his vehicle? It was also created by the fact that these individual agents of the Board of Education never investigated whether or not he had permission. Expert Bridget Connelly testified that an investigation – Can you just answer – I'm asking you a very narrow question, either yes or no. Do you agree that the opportunity was created by Bridgeforth driving the child in his vehicle? Yes, Your Honor, but I believe that there were things that created those situations, those rides. Well, I just wanted that narrow question. So the question – the next question I have is whether or not he had followed CPS policy. If the opportunity is created by driving her in his vehicle, if the mother had given permission, would he have had the same opportunity? Expert Bridget Connelly testified as to that very issue. She testified that if the investigation had begun and they had asked – Counsel, could you please answer the question? I say you can't answer it because we have a time constraint here. And I know you want to tell me what you want to tell me, but I want you to answer what I'm asking. I think I'm misunderstanding, Your Honor. Okay. If opportunity was created by the child being in Bridgeforth's vehicle, then whether or not the child was there with the permission or without the permission of the mother, that opportunity would still be in effect. Is that yes or no? The rides took place over a larger course of time. Counsel, because you are refusing to answer my question. She would be in the vehicle, yes, Your Honor. Okay. Can I add something? As far as causation. Were you finished, Judge? I'm sorry. I apologize. There's cause in fact and there's legal cause, correct? Yes. Cause in fact is usually decided by a but for. But for her being in that car is what happened. As far as the legal causation, this is the issue I'm concerned about. The Wilflin-Watton legal causation. You have to show there was either actual or deliberate intent to harm by this Chicago Public School people. Or there was utter indifference to the safety of others. Now, how has that utter indifference been shown or the actual or deliberate intention to harm been shown to meet the Wilflin-Watton standard? I believe the utter indifference has been shown in the conscious disregard of the safety. And that is because these rules were in place for a reason. Who testified there was conscious disregard? That they made a decision not to seek, to see if there was written permission. Who made that opinion? I mean, that's your opinion. But who testified? Coach Leroy Morgan gave us that definition that I refer to of what Wilflin-Watton in this case is. Ezra Townsend indicated that he, you know, we saw the standard was met by four different Board of Education agents. No, I understand. They said they knew that this fellow was driving. And that they didn't look into it. But was there conscious disregard or utter indifference is what I'm asking you. Your expert only testified that there was blatantly ignorance, blatant ignorance. Does that equate conscious disregard? And we believe it does, Your Honor. There was a motion, well, not a motion, but the judge had ruled that we couldn't use the words conscious disregard during any testimony. So those words were specifically not allowed in this trial. So you won't see those words in the actual record because we used other words, blatantly ignored. We were trying to show the jury how this standard would have been met. Well, couldn't you have argued those in closing at least? And those were argued in closing, Your Honor. They were argued and it was shown that this blatantly ignoring what could be a safety issue, that making a decision not to act with regard to the safety of a student is enough. That is Wilflin-Watton conduct in and of itself. We brought in that testimony through four different agents. I know they testified. They knew the girl was in the car with this fellow. They knew this. But, again, getting to the point of Wilflin-Watton was my question. So thank you. Ms. Rubino, let me jump to a different issue before you run out of time. We have the problem here of concern is, among other things, we have a zero damage award by the jury against Mr. Bridgeworth, all right, who was absent from the trial and who was defaulted. And the justification presented for that, all right, is that the only evidence in the record that the young lady was damaged was from her own testimony. She said that the assault hurt. And we have a case called Snover from the Illinois Supreme Court that says a jury is entitled to simply disregard the testimony of even an unopposed single witness as to pain and suffering and hurt, all right. Simply saying the jury is entitled to say we don't believe her, all right. And you're asking us also to overturn that zero damage award. And how do we do that in light of Snover? Well, Your Honor, Snover says that you need to have objective evidence of damages. And we did have objective evidence of damages in this case because the court found as a matter of law that this sexual assault did occur. This was read to the jury in the statement of case and that was unrebutted by the Board of Education. They even said in closing, we're not refuting that this child was abused. That in and of itself is objective evidence of damages. And I would say that the rest of the evidence that came in, much of it was unrebutted. So the jury did ignore established damages. Unrebutted testimony of emotional distress and her pain during the digital penetration. But let's put the penetration aside for a moment. But things like emotional distress, didn't that resolve down to a battle of the experts and the jury was entitled to? Because we have psychologists. Didn't we say, yes, she was psychologically harmed, no, she wasn't psychologically harmed? And that's for the jury to call. So Dr. Gelser-Levy, who was the defendant appellee's expert psychologist, I'm sorry, yes, psychologist, he actually testified that Doetall did show symptoms of emotional distress. What he was wondering about was the intent of her crying or why she was crying. He was speculating as to why she was crying. But he admitted that the crying during the disclosure of the abuse was a sign of emotional distress. He also said on the stand that individuals who go through sexual abuse as children are more likely to have certain symptoms of trauma. He wouldn't go as far as to say more likely than not, which Dr. Meyer arrests for the plaintiffs. But doesn't he also have contrary testimony, more narrowly focused as to this young victim, to the effect that she did not suffer emotional trauma because of her particular circumstance? There were certain parts of the emotional distress that were not rebutted at all. And one of those is that Doetall herself indicated that she has flashbacks and was frozen for over a year emotionally. Those were not rebutted facts. The credibility argument that the defendant appellees make goes to whether or not Detective Holendoner and Jane Doe believed that the assault had occurred. But Detective Holendoner and Jane Doe never indicated they didn't believe the assault had occurred. They indicated that when the disclosure first occurred, they didn't know if Doe Child was telling them the whole truth. The jury was specifically instructed that Bridget Schwartz was liable and the court had made that determination. Right. Counsel, can I ask you? I'm sorry. I apologize. No, no, no. Go ahead. When Vertif Form 8 came back, what happened? Remind me what happened. Four open lines, which drives me crazy. Blank lines. What happened? What did the court do? So the jury came out three times in this case. The first time they came out, they only- No, I know all that. Oh, okay. When it came out, the final, let's discuss Vertif Form 8. Okay. So on Vertif Form 8, there was a place where they could indicate either not- I know all this. What did the court do as a result of all that? So the court found in favor of the Board of Education, and they also indicated on the record that the jury had found in favor of Interest Bridge 4. And was there any discussion by the lawyers about, wait a minute, there's some open lines here, there's no assessment of damages? We did, yes, Your Honor, but the court found that the fact that there was no assessment on the line of damages  Okay. Thank you. I would just like to briefly again touch on this issue of damages. You're out of time, so we'll do it really fast. I'm sorry, Your Honor? You're out of time, so do your wrap-up as quickly as you can. Thank you, Your Honors. I can wrap up on rebuttal. Thank you. Good morning, Your Honors. Counsel may please support Lee Louder on behalf of the Chicago Board of Education. I'd like to go right to your question, what did the judge do? Before he sent them back the third time, he said, look, consider, go back and look at Verdict Form A and fill it out. He told them to fill it out. And they did fill it out. They said, no, the board is not liable. Then the centerpiece of Verdict Form A was the damages, four lines for it. They looked at that and they said, we don't believe there are any damages. Did they say that by leaving it blank? Yes. And then at the bottom, under that, they marked, Bridgeforth is 100% liable and the board is 0% liable. So they did consider that and they decided not to award damages. I'd like to first address probable cause. I think the but-for cause is the most interesting part here. A person's negligence that doesn't do any more than create a condition by which an intervening cause causes an injury is not the proximate cause of the injury. And that's what we have here with Townsend. I don't believe that he was the but-for cause of Bridgeforth sexually abusing Doe. He was no more the but-for cause of that sexual abuse than Doe's mother giving Bridgeforth permission to drive her was the but-for cause. He was no more the but-for cause than Doe not speaking up. When Townsend asked Mr. Bridgeforth, why didn't you drop her off in the city? And Bridgeforth said, well, I'm going to drop her off with relatives. Was that the but-for cause that Doe didn't speak up? No. They simply didn't prove that Townsend or any other board employee was the proximate cause. Now, one of their arguments is, well, she violated the policy and no one investigated. But their own expert said that that wasn't a policy violation. Their own expert testified that the policy did not apply in this situation of a coach transporting a child from an athletic event. Why did the witness so testify? Because the policy seems fairly clear. It says the teacher shall not drive children individually without permission. Well, Bridget Connolly, their expert, an educational expert, said it doesn't apply when you're talking about transporting a child from an athletic event. She said it's not the school's responsibility to transport a child from an athletic event. And if you've had kids, you know that that's the case. I mean, you bring them home, right? If there's not a bus, you bring them home or you make arrangements. Bridget Connolly testified that was not a student trip as defined in the policy. So their own expert, I mean, the jury could have easily listened to Bridget Connolly over a special education aide who said it was a violation of the policy. Their own expert testified that there was no policy violation. So not investigating cannot have been the reason for foreseeability. Ms. Lauder, do you have a comment about this? You know, it's clear from the briefs and the arguments that the jury instructions were not a model of perfection in this case. And, you know, there are some problems here with the unique circumstances of having a case where one defendant is a live party but not there and has been defaulted. Right. And why do you think the jury wasn't confused by these instructions and that we shouldn't do a do-over? Well, because of verdict form A and verdict form B. They were very consistent. The first time they came out was with verdict form B, saying that the board is not liable. Well, the first time they came out, they hadn't answered the special interrogatory. So the judge sent them out to answer the special interrogatory. When they came back, they came back with verdict form B, which said that the board isn't liable and there's no willful and wanton conduct here. They answered that special interrogatory. Then the judge sent them back, you know, because he was thinking, well, they haven't really answered as to Bridgeforth. So he sent them back. He told them, consider verdict form A and fill it out. He told them to fill it out. And then they came back and they marked, because it had already been predetermined that Bridgeforth was liable, so they marked, no, the board is not liable. Then they ignored the biggest part of that, because they didn't believe that there were damages and they'd like to get to that. And then they skipped down and said Bridgeforth is 100% liable. So, I mean, to say that the jury didn't understand that they could award damages against Bridgeforth, just doesn't make any sense from what they did. And let me move to the damages part. The jury heard conflicting evidence on damages, even as to the physical damage of digital penetration. First, Doe was impeached at trial. She testified in her deposition that she didn't remember whether Bridgeforth ever exposed himself to her. But at trial, she said, oh, yes, he exposed himself and ejaculated, masturbated to ejaculation. So the jury had to consider that impeachment. Second, it wasn't unrebutted that she was digitally penetrated, because right after Mr. Bridgeforth was arrested, he made a detailed confession about what he had done, all against his own interest. He said he had fondled her over her clothes. He said he had put her hand on his penis. He even said that he had touched her vagina over her clothes so that he could feel her. Were his admissions admitted at the trial? Detective Hollandoner testified that this is what he said. And he did not admit to digital penetration. He did or did not? He did not. He did not. But the young lady, the victim, did testify as to the digital penetration. Exactly. So there's conflicting evidence there, too. It's not unrebutted. Because, I mean, he's making all these statements against his own interest, his admissions. Is it unrebutted, though, or is it simply not corroborated? Well, it's not corroborated. Okay. I'm sorry. Sorry. So there is evidence on both sides of that, too. And then, of course, I wanted to bring up the case that they offered in the reply brief, People v. Calva. Even if there were digital penetration in People v. Calva, you had a 27-year-old defendant who put his penis in the mouth of a 6-year-old girl and infected her with chlamydia. And the court found that that was not serious or permanent harm. Because you could get a penicillin shot and get over chlamydia pretty quickly. But there were damages, quantifiable damages, through some other characterization in that case, wasn't there? It may not have been permanent harm, but it could have been pain and suffering and other things. This was a case that they cited about aggravating circumstances. And I just think that that shows that if that's not an aggravating circumstance, that's not serious harm, then finder and acquirer. Excuse me? We have a minor. That was a minor, too. She was 6 years old. Incapable of consent. Neither of them is capable of consent. Take your case aside for a minute, okay? Okay. But in the case we have in front of us. Yes. All right. We have a minor who's incapable of consent, but we have a zero damage award for digital penetration. And we have. And I realize, you know, if we fight in favor of the board on tort immunity, it only becomes an issue as to the absent party, Mr. Bridgeworth. But it's still an issue before us. And I believe that this jury could have found, even with digital penetration, that that was the minimus harm based upon the Calva case, with the 6-year-old, too, who couldn't consent. It sounds like you're suggesting that the jury didn't believe her in terms of her testimony that there was digital penetration. Is that what you're suggesting? I think that's possible that they didn't believe her because she was impeached in her other testimony. And as to the last part about the jury instructions, I think we've gone over that pretty clearly. The judge did. Well, I think I should talk about the one instance where our attorney slipped and said intentional. He said intentional and immediately corrected himself. He said five more times in his argument what the correct standard was. Their attorney said 13 times in the argument what the correct standard was. And the judge told the jury, instructed the jury on the correct standard. So I don't think that one misstatement is sufficient to overturn a jury verdict. It's a very high standard because the jury did a good job here. They put aside their prejudice, they put aside their anger, and they made a decision based upon the facts, which were in conflict on almost every element, and they followed the law. And I think that as far as damages, the jury should also consider that the child here did very well in high school. She did so well in high school that she was able to earn an academic scholarship to college. She ran track all four years. Her mother said she was doing well. She had a bright future. And the mother didn't seek any counseling for her after April of 2013. So she quit counseling early. She has no medical expenses because the Children's Advocacy Center gave her counseling for free. She quit counseling early. In the three years before the trial, her mother didn't arrange for any counseling for her. And that shows, I think, that the jury's finding that the damage here was de minimis, was accurate. And I ask you to affirm that verdict. Thank you very much. Counsel, a brief rebuttal, please. Thank you. Just a brief rebuttal, Your Honors. The Board of Education was a cause, and that was what the plaintiff was required to prove here. They were a but-for cause for Doe Child being in the vehicle, because had the investigation occurred, Jane Doe would not have given permission for one-on-one permission. She would have said no. So who left Doe Child alone with Idris Bridgeforth? On eight occasions, it was the Board of Education agents. I want to address briefly just that Bridget Connolly, the expert, she did say that the Board has no requirement to drive children home from games and other school events, but once they decide to put a child in their private vehicle, the policy applies. She said that on redirect. And I would like to mention just briefly that tort immunity is not before the court today. That is not an issue raised by any of the parties. And finally, I want to get to damages. The testimony of the penetration was unrebutted. Doe Child disclosed, like many victims of sexual abuse do, in parts. She disclosed at first to a teacher. She then disclosed a part to the Detective Holland owner. She then disclosed, like many victims of sexual abuse, in portions, as this was a traumatic experience for her, which she testified. And I just cannot get over it. I would hear really arguing that there was no serious harm caused by the digital penetration of a minor. This is prejudice against a 14-year-old African-American girl who is being villainized for trying to push through something atrocious. And that is what I want this court to truly look at. Did 11 people really decide that a child was not damaged by a sexual assault and digital penetration, despite the fact that the court advising that these sexual assaults did occur? Did 11 people really decide that despite the court instructing them that the sexual assault had occurred, that this plaintiff was not believable? Or did jury confusion, not just because of the use of the word intentional, but because of the jury verdict forms and because of the instruction 3601, did it lead them to a verdict against the manifest weight of the evidence? This decision is going to tell our client and our community whether a sexual assault is damages, the sexual assault of a child. The lower court has ruled in this that it is not. And I urge this court to not let such a ruling stand. I thank you for your time. And I respectfully ask that this panel reverse the trial court's judgment, denying the appellant's motion for a new trial. Thank you. Thank you both, counsel, for a good-spirited argument. This matter will be taken under advisement. The court is adjourned.